**JOHNS et al. v. UNITED STATES.**

No. 13759.

United States Court of Appeals
Fifth Circuit.

March 18, 1952.

W. A. Bootle, T. A. Jacobs, Jr. and
J. W. Barnett, Macon, Ga., for appellants.

Jack J. Gautier, Asst. U. S. Atty., John
P. Cowart, U. S. Atty., Macon, Ga., for
appellee.

Before SIBLEY, RUSSELL and
RIVES, Circuit Judges.

SIBLEY, Circuit Judge.

The indictment in one count charges that
Shep Johns and Bryant A. Meeks from
April 20, 1949 and continuously thereafter
until September 6, 1950, when the indict-
ment was returned, "In the United States
of America, the exact place whereof is
unknown, did unlawfully, wilfully and
knowingly conspire and agree together and
with each other, and with W. S. Tucker
and Clara Tucker, who are named as con-
spirators but not charged as defendants,
and with divers other persons to the Grand
Jurors unknown, unlawfully to possess,
transport and sell distilled spirits, to-wit,
whisky, the immediate containers whereof
did not and should not have affixed thereto
a stamp denoting the quantity of distilled
spirits contained therein and evidencing the
payment of all internal revenue taxes im-
posed on said spirits". Six overt acts in
furtherance of the conspiracy are alleged,
five of them done by Meeks or Tucker in
Bibb County in the Middle District of
Georgia, and one done by Johns in Baker
County, Florida.

Meeks and Johns were found guilty
and appealed. Meeks has dismissed his
appeal and is presumably serving his sen-
tence. Johns is vigorously asserting error
in overruling his motion to dismiss the
indictment; in not sustaining his motion
for acquittal; in not sustaining his several
objections to evidence received of acts
and conversations of Meeks and Tucker,
not in his presence; and of certain tele-
phone company records of calls made by
Meeks and Mrs. Clara Tucker.

1. As to the indictment, it is urged
that there is no allegation that the con-
spiracy was to commit any offense against
or to defraud the United States, or that
the distilled spirits to be handled were
subject to tax in the United States, or were
to be handled there, or to be fit for or
intended for beverage purposes; and that

without aid from the allegations of the overt acts which cannot aid the description of the conspiracy, the indictment fails to charge any offense under the laws of the United States.

■ It is true that the allegations of the overt acts, while important to show that the conspiracy alleged ripened into a crime, 18 U.S.C. § 371, and to fix venue for prosecution, do not constitute part of the description of the conspiracy charged. It is true also that this indictment should have charged that the possession, transportation and sale of distilled spirits in unstamped containers were to be done in the United States and would constitute offenses against the laws of the United States. But it is alleged that the conspiracy was formed in the United States, and each overt act alleged to be in pursuance of it was done in the United States; and we judically know that statutes of the United States exist which penalize such dealings with distilled spirits in unstamped packages; and it is expressly alleged that the agreement was *"unlawfully* to possess, transport and sell whisky"; and especially because the record as a whole shows that everyone concerned knew, during the trial, what the Grand Jury meant and no surprise is shown, we are loath to upset the trial on these grounds. We do not commend this as a good criminal pleading, but ignore its faults under the circumstances.

2. The meritorious question is whether the evidence shows with the certainty required in felony cases that Johns was a co-conspirator. In brief, the evidence for the prosecution, though flatly denied by Meeks and Johns, is that Meeks, in Bibb County, Georgia, about April 20, 1949, approached Tucker, who had lived in an adjoining apartment with his wife, Clara, and infant child, and was out of work, and proposed to employ him for $50.00 per week and expenses, to haul "bootleg whisky" in Meeks' automobile from Florida to Macon, Georgia, where it would be hidden out until resold by Meeks at retail and delivered to customers by Tucker. To this, in his wife's presence, Tucker agreed. The next day Meeks and Tucker drove to MacClenny, Baker County, Florida. On the way, at Alma, Georgia, Meeks arranged at a filling station to leave there 5 gallons of moonshine whisky on the return trip. Arriving at MacClenny, Meeks got out of the car at the home of Johns, who was unknown to Tucker, and talked with him on the porch. Tucker did not hear what passed. Tucker and Meeks then went to the home of Meeks' mother-in-law some eight miles away, where Mrs. Meeks was visiting, and there spent the night. Before retiring Meeks gave Tucker $200.00 in cash to pay for 100 gallons of whisky which was to be picked up early next morning. Meeks and his wife and Tucker, at 3 o'clock a. m., left in the car and went by the home of Johns and woke him up. Meeks and his wife were then left at the bus station to ride to Macon, and Meeks told Tucker to go back to Johns' house and someone would meet him there about 6 o'clock. Three young men (not Johns) met Tucker and took him out of town to a lonely place where about 100 gallons of whisky in unstamped jugs containing 5 gallons each, were delivered and placed in the car which Tucker was driving, the rear seat having been taken out in Macon. Tucker paid one of the men the $200.00 and drove back to Macon, leaving a jug of whisky at Alma, for which he collected six or seven dollars a gallon. Arriving at Macon, the remaining jugs were hidden at a place agreed on with Meeks and retailed out by the gallon to customers of Meeks at seven or eight dollars per gallon, proceeds received by Meeks, Tucker getting $50.00 per week and expenses for gasoline, as agreed. After about two weeks a second trip to MacClenny and Johns' house was made by Tucker, Mrs. Tucker and the baby going along at the suggestion of Meeks for an "appearance of gentility". A similar purchase was made of 100 gallons at $2.00 per gallon and paid for in cash to the unknown young gentlemen who delivered the whisky. A third like trip was made a week or ten days later, but on the way back Tucker and his wife were arrested at Alma and the automobile and whisky seized. Tucker was prosecuted and fined in a State Court after about a month's imprisonment, Meeks.

refusing to help him. Tucker and his wife at first claimed the whisky, as they testify Meeks had told them to do if caught, but afterwards they told the matter to a federal investigator, as above sketched.

Their testimony, if believed, shows a conspiracy between them and Meeks to possess, transport and sell whisky in unstamped packages as alleged. As to Johns, they testify nothing save that they went to his house at the direction of Meeks and were by Johns put in touch with the unknown young men. Mrs. Tucker also testifies that Meeks used her telephone to call Johns before one of the trips and the call, 75 cents, was charged on her bill. She did not know what was said between Meeks and Johns.

Johns and Meeks testified that they had not known each other before they were indicted and sought each other out then to find out what it was about. They denied *in toto* the dealings related by the Tuckers. Their contention is that the Tuckers were in the liquor business and were falsely accusing them to get immunity for themselves.

Tucker testifies flatly and repeatedly that in his dealings with Johns, Johns only put him in touch with the "young gentlemen", who delivered the liquor each time and received the money, and there was no further understanding with or interest in any of them; they had no interest in where he took the jugs, or what he did with them; there was no agreement with them to go into the liquor business; nothing mentioned about whether the whisky was to be sold or drunk, or thrown in the river. After the indictment the Tuckers say that Johns and his wife came to Macon three times trying to get them to say they could not identify Johns as the person they saw in MacClenny; and on the last trip Mrs. Johns gave Mrs. Tucker a $100.00 bill sealed in an envelope as "a Christmas present", which was turned over to the federal investigator and produced in court.

This evidence fairly shows that Johns and his young men were cooperating together to possess and sell untaxpaid whisky by wholesale and are guilty of that, and for that they are liable for prosecution in Florida, but not in the Middle District of Georgia. The apparent effort to bribe the Tuckers not to recognize Johns might indicate guilt of that as well as of this conspiracy. There is no positive testimony that Johns joined in or agreed to assist Meeks in his enterprise in Georgia. He knew of course, that the Tuckers were about to remove the unstamped jugs which Meeks had arranged to buy and which Tucker bought, and the quantity indicated that Meeks and Tucker were not going to drink, but to sell it; but every circumstance is as consistent with the theory that Johns was selling Meeks whisky in Florida as that he was joining with Meeks in transporting and selling it in Georgia. Certainly the latter theory is not proved true beyond a reasonable doubt, unless to sell illicit whisky necessarily joins the seller as a conspirator with the buyer in what the buyer seems about to do with it.

This question has often arisen touching the selling both of whisky and the materials for making it, under the prohibition laws and under the internal revenue laws, and has been answered differently in the different Circuits. It would be tedious and unprofitable to review the cases and attempt to distinguish or reconcile them. In this Circuit in Young v. United States, 48 F.2d 26, 27, it was held that sellers of articles intended for use by the buyers in the illicit manufacture of intoxicating liquors were not shown to be conspirators with the manufacturers by successive sales and knowledge of the use intended; but that proof of actual participation in a conspiracy is necessary to fasten guilt on the seller. It was pithily said, "There was no evidence that Lee, Franklin, and Campbell were acting in concert; for all that appears, each was acting only for himself." United States v. Falcone, 109 F.2d 579, 581, arose in the Second Circuit under the internal revenue laws. The same question was presented. The court reviewed some of the cases, finding that in some circuits the seller and buyer were treated as *ipso facto* conspirators, but that in the Fifth and Second Circuits more than a mere sale with knowledge of an intended illegal use by the buyer was necessary to show a

conspiracy between them. The court commented on the "dragnet of [a] conspiracy" charge sweeping in all who have had any connection with each other, distorting often the venue for trial, and intoducing confusion as to evidence admissible against one but not another defendant, and as to the sayings of one defendant about another; even as in this present case. The court held that the seller did not join in a conspiracy by merely selling what he knows the buyer intends to use in committing a crime, but that he must "in some sense promote the venture himself, make it his own, have a stake in its outcome." The case was taken on certiorari by the Supreme Court, to resolve the conflicts in the Circuits, and affirmed. United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 206, 85 L.Ed. 128. Among other things the Supreme Court said: "The evidence respecting the volume of sales to any known to be distillers is too vague and inconclusive to support a jury finding that respondents knew of a conspiracy from the size of the purchases even though we were to assume what we do not decide that the knowledge would make them conspirators or aiders and abettors of the conspiracy."

We conclude that though Johns may have been a wholesaler of untaxed whisky, it is not shown that he entered into or even knew of the conspiracy between Meeks and the Tuckers to transport and possess and sell such. It does not appear that he did more than on applications or orders from Meeks, to agree to sell on three separate occasions 100 gallons of unstamped whisky at $2.00 per gallon if Meeks would send for it, and delivered the whisky accordingly, having no further interest in or activity about it. He may be prosecuted in Florida for what he did there, but is not shown to have joined in the Georgia conspiracy as alleged. It is unnecessary to rule on other questions.

The motion of Johns for judgment of acquittal ought to have been granted and is directed to be entered, to which end the cause as to Johns is remanded to the district court. The appeal of Meeks is dismissed, he having withdrawn it.