**UNITED STATES of America**

v.

**2,265 ONE–GALLON PARAFFINED TIN CANS, etc.**

**Civ. A. No. 408.**

United States District Court
N. D. Georgia,
Newnan Division.

Feb. 4, 1958.

See also 170 F.Supp. 579.

James W. Dorsey, U. S. Atty., Atlanta, Ga., for plaintiff.

Howe & Murphy, Buchanan, Ga., for defendant.

SLOAN, District Judge.

The United States of America, through this libel of information, seeks to condemn as forfeited various items of personal property described in the libel, alleging that said property was had and possessed in Haralson County, Georgia, by the said William C. Cumby as property intended to be used for and in the manufacture of distilled spirits whereon the tax imposed by the laws of the United States had not been paid.

The libel is based upon the provisions of §§ 5686(b) and 7302 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 5686 (b) and 7302).

William C. Cumby files an answer to said libel asserting that he is the owner of said property but denies the guilt of the property as charged in the libel.

The cause came on to be tried to the Court without a jury. The libellant introduced evidence and the claimant introduced evidence. Argument of counsel was had and briefs and proposed findings and conclusions have been presented by the parties, and the Court, giving consideration to the evidence, makes the following:

### Findings of Fact

For many years prior to June 13, 1957, William C. Cumby was a dealer in metals and other merchandise but his business was not located in its present location during all of that period.

On June 13, 1957, and for sometime prior thereto, William C. Cumby owned and operated a store or warehouse adjacent to his dwelling located on a dirt road off the main highway, being U.S. Highway No. 78 between Tallapoosa, Georgia and the Georgia-Alabama State line. The business bore no sign or name of the business, and the type of business conducted therein could not be determined by persons passing along the road or highway.

In the store or warehouse Cumby had upon his shelves or stored therein

goods and wares as follows: Galvanized pipe of various lengths and sizes, aluminum pipe of various lengths and sizes, copper pipe of various lengths and sizes, sheets of galvanized metal, sheets of aluminum metal, metal fittings, and couplings of various sizes, cut-off valves, control valves of various sizes, pressure gauges, rubber hose, plastic hose with clamps and couplers, 2,265 one-gallon paraffin-lined tin cans, wooden and metal barrels of various sizes, approximately 2,600 cases of one-half gallon fruit jars, 200 burners, 850 pounds of dry yeast, 19 whiskey hydrometers, 6 mash hydrometers, 11 pints of beading oil, pressure tanks, bottle caps and corks and other miscellaneous items of merchandise, all of which was located in said store or warehouse.

At all times prior to the seizure of the goods here involved, such goods were owned by and were in the exclusive possession of claimant, William C. Cumby.

All of the goods handled by Cumby were capable of being used in legitimate trade or business and were also capable of being used in the production and manufacture of illicit whiskey.

Many of the items of stock such as pipe fittings, valves, couplings, pipe, sheet metal and pressure gauges, though capable of being used in connection with illicit distilleries, their more common use was for legitimate purposes such as in building, plumbing and heating.

On May 23, 1957, two criminal investigators of the Alcohol and Tobacco Tax, Internal Revenue Service, Treasury Department, posing as persons who wished to become engaged in the manufacture of illicit whiskey, visited the premises of Mr. Cumby and told Mr. Cumby that they wanted to set up a 10-sack outfit and that they did not know what materials were necessary for such an installation. Mr. Cumby advised the officers that he knew what they needed and proceeded to make a list of the articles which Cumby told them they would need in setting up such an outfit. This list included 20 feet of aluminum for the still pot, one barrel for the cap, another for the doub-

ler, a burner, pressure tank and hand pump. Mr. Cumby advised these officers as to the type of metal best to use in making the still pot and the better type of pressure tank. He sold them a hydrometer, an instrument to test the alcoholic content of whiskey, and a beer meter, an instrument to determine when the fermenting mash is ready for distillation. The burner that was sold to these officers was one made by the claimant. Cumby also sold to the officers beading oil and a filter bag.

Cumby told the officers that he did not cut the "heads" for distilleries but told them where they could get the heads and the dimensions for the head and size of the hole in the head for the capping; that while he did not have a condenser, that he did have copper tubing for sale. The claimant cut holes in the barrel for the officers and offered to sell them fruit jars at a special price.

Cumby also told them as they prepared to leave to keep the beading oil on the seat of the car so they could throw it out in case they were stopped by the law.

At a subsequent time, and on May 28, 1957, two investigators returned to Cumby's warehouse and bought ten cases of one-half gallon fruit jars and 50 one gallon cans at which time Cumby told them he was not selling many jars since the "fellows were having a hard time getting sugar". Cumby told the officers that if things got bad for them that he could get them as much as 200 bags of sugar but it would cost them a premium price of approximately $12 a bag since there was a shipping clerk, the man who owned the place, and a fellow making the deal and the fact that he would have to make a 700 mile round trip to get the sugar. On June 6, 1957, when the officers asked Cumby about the sugar he said that he would call and make the arrangements and if he couldn't get 200 bags, there was a possibility he could get 100 bags closer and that he would let them know something the next week.

None of the materials that were obtained by these officers on May 23 or on May 28 are involved in the libel here,

those goods being delivered to the officers and retained by them and are not here involved.

On the premises of Cumby and near his store or warehouse, trucks and automobiles used by illegal operators in transporting materials for the manufacture of illicit whiskey, as well as still vats and condensers, were observed by the officers. Burners, similar in type to those sold by Cumby, and still pots made from tin and aluminum which materials were sold by Cumby, were seized at numerous illicit distilleries.

On June 13, the entire stock of goods contained in the store and warehouse of William C. Cumby was seized upon the execution of a federal search warrant and the property so seized is the property described in the instant libel.

Claimant's place of business was patronized by persons having either a record or reputation for violating the Interal Revenue laws with respect to nontax paid liquor and the place of business was also patronized by customers who did not have such a reputation and were contractors or builders who bought and used the metals or plumbing and heating supplies sold by Cumby. It is uncontroverted in the record that Cumby had many such customers.

William C. Cumby did intend to sell said materials and merchandise to any person who wished to purchase same, even though he believed or had cause to believe that such purchasers themselves intended to use the materials so purchased for the production of illicit nontax paid liquor.

The goods handled by Cumby were those required and demanded by persons engaged in the business of manufacturing illicit liquor. Cumby catered to that trade. Cumby knew that generally many of his customers were reputedly engaged in the illicit liquor business and that the goods he sold them would in all probability be put to that use. However, Cumby did not himself intend to put the goods to such use nor was he in any way to share in the profits or have any stake in the venture of the purchasers.

All of the property seized by the federal officers was property located in the store or warehouse or on its shelves and was material and merchandise held by William C. Cumby for resale.

William C. Cumby did not intend to use nor cause to be used any of the materials or merchandise seized in the manufacture or production of nontax paid liquor.

The Court finds that all of the goods seized or goods on the shelves or in the store of William C. Cumby were possessed by him with no intention to use the same in any manner except for resale, and that if such sale was to persons who intended to use it for the production of illicit nontax paid liquor, then Cumby had no interest in such venture and no share in the profits, if any, from it.

The Court finds that if the goods so seized had been left in the hands of Cumby for sale and if the sales had taken place in the normal course of Cumby's business that a large part of said materials would have been sold to customers who had a reputation for dealing in nontax paid liquor, and who in all probability intended to use such materials in the production of nontax paid liquor, while a smaller part of said materials or stock of merchandise would have been purchased by customers who did not have the reputation of dealing in illicit liquor and who would not have used the materials purchased from Cumby for such a purpose but would have used them in legitimate business.

The Court finds the property not guilty.

### Conclusions of Law

This Court, by virtue of the provisions of § 7323 of the Internal Revenue Code of 1954 (26 U.S.C. § 7323), has jurisdiction in this case.

The question presented in this case is:

Does the phrase "property intended for use" in §§ 5686(b) and 7302 Internal Revenue Code of 1954 (26 U.S.C. §§ 5686 (b) and 7302) authorize the forfeiture of the entire stock of goods of a merchant, which stock consists of materials and articles commonly used in the manu-

facture of nontax paid whiskey, when the merchant from whom the property is seized is holding the property solely for sale, but who has knowingly held out for sale and has sold like materials to persons having reputation as moonshiners, knowing the property he holds out for sale will in all probability be used by the purchasers in violation of the Internal Revenue laws relating to distilled spirits?

Section 7302 of the Internal Revenue Code of 1954 (26 U.S.C. § 7302) provides:

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in Chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws."

Section 5686(b) of the Internal Revenue Code of 1954 (26 U.S.C. § 5686(b)]) provides:

"It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this chapter, or regulations prescribed thereunder, or which has been so used, and every person so having or possessing or using such liquor or property, shall be liable to a fine not to exceed $5,-000, or to imprisonment for not more than 1 year, or both."

It is undisputed in the record in this case that the property here involved belonged to the claimant, William C. Cumby, and the same was at all times prior to the seizure in his exclusive custody and control.

■ The burden rests upon the Government to establish the material allegations of the libel. Anderson v. United States, 5 Cir., 185 F.2d 343. Since the property seized was owned by and in the exclusive control of William C. Cumby, the claimant herein, the intent to use or cause the use of the seized property, in violating the provisions of the Internal Revenue laws or regulations, must have been the intent of the claimant, William C. Cumby. This was recognized by counsel for the Government in the original brief filed in this case prior to the trial where, on page 25 of the brief, counsel said,

"In the Ward and Cumby cases the Government must prove that the property seized in the warehouses was possessed or owned by Ward and by Cumby with intent to put or cause the property to be put to the unlawful use of manufacturing illicit stills or nontax paid distilled spirits; in other words, Ward and Cumby as possessors of the property must have the unlawful intent, and the intent of the moonshiner who is going to actually use the property in violation of the law is legally unimportant."

Upon the trial of the case, when the Court called counsel's attention to this statement in the brief, counsel at that time sought to state a different proposition upon which they relied. However, the Court is of the opinion that the intent to use the seized property, or to cause the same to be used in violation of the Internal Revenue laws, must have been that of the claimant, William C. Cumby. The intent to so use, or to cause the property to be so used, can not be that of a person who has neither

the title nor the right of possession or control of the property. Stroud v. United States, 5 Cir., 199 F.2d 923.

It is clear from the facts in this case that the claimant, William C. Cumby, did not intend to use the seized property, nor cause the same to be used, in violation of the Internal Revenue laws or regulations, but on the contrary possessed and owned the property for the sole purpose of selling it. In the Second and Fifth Circuits the rule is that:

> "The seller of goods does not become a 'conspirator' or an 'abettor' merely because he does not refrain from selling goods which he knows the buyers intend to use in committing a crime, but he must in some sense promote their venture himself, make it his own, or have a stake in its outcome, before he is guilty as a 'conspirator' or an 'abettor'." United States v. Falcone, 2 Cir., 109 F.2d 579. Affirmed U. S. Supreme Court, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128. See also, Young v. United States, 5 Cir., 48 F.2d 26; Johns v. United States, 5 Cir., 195 F.2d 77, 79.

It is the contention of the Government in this case that the actions of Cumby in aiding and abetting the federal officers whom Cumby believed to be moonshiners is evidence sufficient to show that the materials held by Cumby were property intended for use in violation of the Internal Revenue laws within the meaning of §§ 5686(b) and 7302 of the Internal Revenue Code of 1954.

Whether the argument offered by the Government is sound, insofar as the materials involved in those transactions are concerned, is not for decision here because those materials are not included in this proceeding. The Government here seeks to extend the alleged guilt to merchandise on the shelves which was in no way involved in those particular transactions.

As was pointed out by Judge L. Hand in the Falcone case, supra:

> "The seller of goods does not become * * * an 'abettor' merely because he does not refrain from selling goods which he knows the buyers intend to use in committing a crime, but he must in some sense promote their venture himself, make it his own, or have a stake in its outcome, before he is guilty as * * an 'abettor'."

So far as the transactions with the Internal Revenue agents are concerned, Cumby did in some sense promote their venture himself but he did not make it his own nor have any stake in its outcome.

The Government relies strongly on a decision written by Judge Hutcheson, now Chief Judge of the United States Court of Appeals for the Fifth Circuit, which he decided as a district judge. United States v. One Lot Of Intoxicating Liquor, 5 Cir., 27 F.2d 903. In that case the libel of forfeiture was brought by the United States upon the allegation that certain properties seized by the deputy prohibition administrator in a store owned by and in possession of defendant, Thomas Maddi, at 1700 W. Dallas Street, consisting of cans, crocks, hose, bottles, cappers, sugar, malt, flavoring extracts, rye, hops, etc., and other similar articles, were *designed* and intended for use in the unlawful manufacture of intoxicating liquor, and *possessed for sale* for such unlawful use, and that such property became and thereby is forfeited to the United States. (Emphasis supplied.)

The statute under which the United States was there proceeding was under the "National Prohibition Act" which provided, as follows:

> "It shall be unlawful to advertise, manufacture, sell, or *possess for sale* any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction, or recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor." (Emphasis supplied.) 27 U.S.C.A. § 30.

The difference in the statute then in force and the provisions of the Internal Revenue Code here applicable distinguish

the holding of Judge Hutcheson, and that decision is no authority for the position of the Government in this case.

Cumby possessed the goods here involved for the purpose of sale only. He did not intend to use them himself nor to cause them to be used in violation of the Internal Revenue laws. If the persons to whom Cumby was to sell a portion of said goods had reputations of being moonshiners, and Cumby knew, or had reason to know, that they would use the goods in the manufacture of illicit liquor in violation of the Internal Revenue laws, Cumby did not promote their venture himself, make it his own, or have any stake in its outcome.

The property is not guilty and judgment in accordance with the findings and conclusions here entered may be prepared and presented.