### UNITED STATES v. FALCONE et al.
### No. 193.

Circuit Court of Appeals, Second Circuit.
Feb. 13, 1940.

Daniel H. Prior of Albany, N. Y., for Salvatore Falcone and Joseph Falcone.

Roger O. Baldwin, of Syracuse, N.Y., and Jack J. Danella, of Utica, N.Y., for Alberico.

Stanley Palewski, of Utica, N. Y., for John Nole.

Irving K. Baxter of Utica, N. Y., for Lawrence Grimaldi, Nicholas Nole, Salvatore Graniero, and Frank Soldano.

David D. Joselit, of Syracuse, N. Y., and Ralph L. Emmons, U. S. Atty., for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

These appeals are from convictions for a conspiracy to operate illicit stills. There were originally sixty-eight defendants, but the appeals before us concern only eight, which may be divided into two groups: one those of the appellants, Salvatore and Joseph Falcone, Alberico, John and Nicholas Nole; the other, of Grimaldi, Graniero and Soldano. Two other defendants, Milozzo and Melito, have withdrawn their appeals. The second group were actual distillers; the first supplied them and other distillers with sugar, yeast, and cans, out of which the alcohol was distilled, or in which it was sold. The evidence disclosed that in the year 1937 and 1938 within a radius of fifty miles from the City of Utica some twenty-two illicit stills had been set up, which were in each case to some extent operated after the same pattern; that is to say, real property was bought or leased, motor cars were registered, and applications for electric and water services were made, all in fictitious names; the equipment and materials were bought from the same persons; and the distillers frequented the same café or saloon, where they talked together. Grimaldi, Graniero and Soldano were all operators of one or more stills; the evidence of their guilt was ample; and they complain only of the manner in which the trial was conducted. We shall reserve their objections till the end, because the most serious matter is as to the sufficiency of the evidence to support the verdict against the others.

The case against Joseph Falcone was that during the year 1937 he sold sugar to a number of grocers in Utica, who in turn sold to the distillers. He was a jobber in Utica, and bought his supply from a New York firm of sugar brokers; between March first and September 14, 1937, he bought 8,600 bags of sugar of 100 pounds each, which he disposed of to three customers: Frank Bonomo & Company, Pauline Aiello, and Alberico and Funicello, all wholesale grocers in Utica. Some of the bags in which this sugar was delivered were later found at the stills, when these were raided by the officials; and Falcone was seen on one occasion assisting in delivering the sugar at Bonomo's warehouse, when a truckload arrived. His business in sugar was far greater while the stills were active than either before they were set up, or after they were seized, and we shall assume that the evidence was enough to charge him with notice that his customers were supplying the distillers. The evidence against Salvatore Falcone went no further than to show in various ways that he helped his brother in purchase of sugar during the period in question; there is really nothing to show that he knew its eventual destination. However, since in the view we take of the law he was equally innocent if he did, in disposing of his case we shall assume that he did know. Alberico was a member of the firm of Alberico and Funicello who, as we have just said, were buyers from Joseph Falcone. Alberico's purchases and sales of sugar also varied with the activity of the stills. In the first three months of 1937, when there were five or six of these operating in or about Utica, his purchases ran up to over a half-million pounds; after they had been raided in April, his business fell off to very little; when they became active again in September, his purchases rose again. A like correspondence, though less exact, was proved for the early part of the year 1938. A jury might also have taken the conversation which he had with one of the distillers, Morreale, as evidence of his knowledge of the kind of business that he was supplying. While the stills were active, Alberico also did a large business in five-gallon cans which he sold direct to the distillers. Many cans sold by him were found at the stills when they were raided. The evidence against Nicholas Nole consisted of his sales of yeast and cans to the distillers. The prosecution proved that in the spring of 1937 he had ordered and received shipments of imported yeast through a forwarding company of which he was the owner; and that in July and August of that year he bought of the Atlantic Yeast Company 8,300 pounds of yeast packed in wrappers, made expressly for the "Acme Yeast Company", a name under which he did business by virtue of a certificate, taken out for him by a cousin. Many of

these wrappers were found at several of the stills. The case against John Nole depended upon the assistance which he gave his brother, Nicholas, and upon his being distributor for the National Grain Yeast Company for Utica during the years 1937 and 1938, a number of whose wrappers were found at the stills. Again we shall assume that the Noles knew that Nicholas's customers were illicit distillers.

■ In the light of all this, it is apparent that the first question is whether the seller of goods, in themselves innocent, becomes a conspirator with—or, what is in substance the same thing, an abettor of—the buyer because he knows that the buyer means to use the goods to commit a crime. That came up a number of times in circuit courts of appeal while the Eighteenth Amendment was in force, and the answer was not entirely uniform. The first case we have found is Pattis v. United States, 9 Cir., 17 F.2d 562, where, although the accused appears to have been in fact more closely connected with the buyer's crime than merely as a seller, the court affirmed a charge to the jury that he was guilty if he merely had notice of the future destination of the goods. That appears to be the settled doctrine in that circuit. Vukich v. United States, 9 Cir., 28 F.2d 666, 669; Borgia v. United States, 9 Cir., 78 F.2d 550, 555. The same is true of the Seventh Circuit. Anstess v. United States, 7 Cir., 22 F.2d 594; Hubinger Company v. United States, 7 Cir., 64 F.2d 772. And of the Sixth. Rudner v. United States, 6 Cir., 281 F.2d 516, 520. The Fifth has, however, held otherwise, though by a divided court, Young v. United States, 5 Cir., 48 F.2d 26. In that case the judges differed because of their interpretation of Edenfield v. United States, 273 U.S. 660, 47 S.Ct. 345, 71 L.Ed. 827, which, on the authority of United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986, reversed a conviction upon a count for conspiracy to manufacture liquor without a license. The indictment also contained a count for conspiracy to manufacture liquor contrary to the National Prohibition Law, 41 Stat. 305, and the conviction on this the court did not disturb; the question was whether in doing so it had held that the mere sale of materials for making a still, and of sugar and meal to make liquor, was enough to convict. The opinion below (Edenfield v. United States, 5 Cir., 8 F.2d 614) indicated that there had been nothing more to hold the seller, but when the same court in Young v. United States, supra, (5 Cir., 48 F.2d 26), came to consider the effect of the reversal, the majority said that there had in fact been much more; i. e., that the accused had taken part in setting up the stills, and in selling the liquor after it was made. We do not think, therefore, that Edenfield v. United States, supra, (273 U.S. 660, 47 S.Ct. 345, 71 L.Ed. 827), should be regarded as passing upon the point. We are ourselves committed to the view of the Fifth Circuit. United States v. Peoni, 2 Cir., 100 F.2d 401. In that case we tried to trace down the doctrine as to abetting and conspiracy, as it exists in our criminal law, and concluded that the seller's knowledge was not alone enough. Civilly, a man's liability extends to any injuries which he should have apprehended to be likely to follow from his acts. If they do, he must excuse his conduct by showing that the interest which he was promoting outweighed the dangers which its protection imposed upon others; but in civil cases there has been a loss, and the only question is whether the law shall transfer it from the sufferer to another. There are indeed instances of criminal liability of the same kind, where the law imposes punishment merely because the accused did not forbear to do that from which the wrong was likely to follow; but in prosecutions for conspiracy or abetting, his attitude towards the forbidden undertaking must be more positive. It is not enough that he does not forego a normally lawful activity, of the fruits of which he knows that others will make an unlawful use; he must in some sense promote their venture himself, make it his own, have a stake in its outcome. The distinction is especially important today when so many prosecutors seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders. That there are opportunities of great oppression in such a doctrine is very plain, and it is only by circumscribing the scope of such all comprehensive indictments that they can be avoided. We may agree that morally the defendants at bar should have refused to sell to illicit distillers; but, both morally and legally, to do so was toto coelo different from joining with them in running the stills. State ex rel. Dooley v. Coleman, 126 Fla. 203, 170 So. 722, 108 A.L.R. 326, accords with this view.

■ For these reasons the prosecution did not make out a case against either of the Falcones, Alberico, or John Nole; and this is especially true of Salvatore Falcone. As to Nicholas Nole the question is closer, for when he began to do business as the "Acme Yeast Company", he hid behind the name of a cousin, whom he caused to swear falsely that the affiant was to do the business. Yet it seems to us that this was as likely to have come from a belief that it was a crime to sell the yeast and the cans to distillers as from being in fact any further involved in their business. It showed a desire to escape detection, and that was evidence of a consciousness of guilt, but the consciousness may have as well arisen from a mistake of law as from a purpose to do what the law in fact forbade. We think therefore that even as to him no case was made out.

■ We need consider only three of the four points raised by Soldano, Graniero and Grimaldi. The first is that the judge allowed some of the other accused to plead guilty in the presence of the jury. The argument is that in doing so, these confessed that they had been parties to a conspiracy, and thus supplied a link in the evidence necessary to convict the appellants, without the sanction of an oath, or the protection of cross-examination. The same objection has been several times raised, and always, so far as we have found, without success. Grunberg v. United States, 1 Cir., 145 F. 81, 86; Schliefer v. United States, 3 Cir., 288 F. 368; United States v. Rollnick, 2 Cir., 91 F.2d 911, 917. In the case at bar it does not appear whether the appellants objected at the time, and furthermore in his charge the judge told the jury to disregard the incident. On any theory the chance that harm was done seems to us fanciful; the existence of some kind of conspiracy was proved beyond peradventure, and the only important issue was whether these appellants were connected with the enterprise.

■■ The second point is that some of the evidence was seized upon a defective search warrant, the defect being that the place to be searched was described as a "Dwelling house, No. 1166 Webster Avenue", without adding that it was in Utica, New York. The warrant is not in the record and we do not know where it was issued; if in Utica, the point is utterly immaterial; and even if it was issued elsewhere, the omission was not vital. A warrant must indeed be specific enough not to allow the officers latitude to search at their choice; but the chance that there might be two dwelling houses at the same street and number in different cities, was so remote as to be negligible. All that is required is reasonable certainty of identification. Steele v. United States, No. 1, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757; Chiaravalloti v. United States, 7 Cir., 60 F.2d 192; Rose v. United States, 8 Cir., 45 F.2d 459.

■ The last point is the admission of evidence of the existence of illicit stills with which the appellants were not shown to have been connected, and the judge's instruction to the jury that this bore upon the existence of the conspiracy, even though all the conspirators had not personally been connected with those particular stills. The prosecution was trying to prove that the twenty-two stills were being operated in concert; it would be most unlikely that all the conspirators would be operating every still; there would be a division of labor in this, as in lawful enterprises. Even though all the stills were not shown to have been run under a single scheme, it would not be fatal to the prosecution; at worst it would be only a variance, and that not a material one, for there was some concerted scheme, and if the prosecution failed to prove that it had spread as far as the indictment alleged, it did not matter. It is quite true that there was a danger that the existence of so much illicit distilling might predispose the jury to assume that all the accused were connected with it; but that was unavoidable if the prosecution was to be allowed to try to prove the scheme as alleged. It might be held as it used to be, that variances were material just because of that danger, but today courts are disposed more to rely upon the ability of a jury to distinguish between those who are in fact involved in the crime, and those who are not; and there can be little doubt that in the long run this latitude promotes the administration of justice.

The convictions of Salvatore and Joseph Falcone, of Alberico and of Nicholas and John Nole are reversed. The convictions of Soldano, Grimaldi and Graniero are affirmed.