## UNITED STATES *v.* FALCONE ET AL.

No. 42. Argued November 18, 1940.—Decided December 9, 1940.

*Assistant Attorney General Rogge,* with whom *Solicitor General Biddle* and *Messrs. Raoul Berger, Irwin L. Langbein, Herbert Wechsler, George F. Kneip,* and *W. Marvin Smith* were on the brief, for the United States.

*Mr. Daniel H. Prior* for Salvatore and Joseph Falcone, and *Mr. Roger O. Baldwin* for Henry Alberico, respondents, for whom also *Mr. Anthony S. Falcone* entered an appearance.

Mr. Justice Stone delivered the opinion of the Court.

The question presented by this record is whether one who sells materials with knowledge that they are intended for use or will be used in the production of illicit distilled spirits may be convicted as a co-conspirator with a distiller who conspired with others to distill the spirits in violation of the revenue laws.

Respondents were indicted with sixty-three others in the northern district of New York for conspiring to violate the revenue laws by the operation of twenty-two illicit stills in the vicinity of Utica, New York. The case was submitted to the jury as to twenty-four defendants, of whom the five respondents and sixteen operators of stills were convicted. The Court of Appeals for the Second Circuit reversed the conviction of the five respondents on the ground that as there was no evidence that respondents were themselves conspirators, the sale by them of materials, knowing that they would be used by others in illicit distilling, was not sufficient to establish that respondents were guilty of the conspiracy charged. 109 F. 2d 579. We granted certiorari, 310 U. S. 620, to resolve an asserted conflict of the decision below with those of courts of appeals in other circuits. *Simpson* v. *United States,* 11 F. 2d 591; *Pattis* v. *United States,* 17 F. 2d 562; *Borgia* v. *United States,* 78 F. 2d 550; *Marino* v. *United States,* 91 F. 2d 691; see *Backun* v. *United States,* 112 F. 2d 635. Compare *Young* v. *United States,* 48 F. 2d 26.

All of respondents were jobbers or distributors who, during the period in question, sold sugar, yeast or cans,

some of which found their way into the possession and use of some of the distiller defendants. The indictment while charging generally that all the defendants were parties to the conspiracy did not allege specifically that any of respondents had knowledge of the conspiracy but it did allege that respondents Alberico and Nole brothers sold the materials mentioned knowing that they were to be used in illicit distilling. The court of appeals, reviewing the evidence thought, in the case of some of the respondents, that the jury might take it that they were knowingly supplying the distillers. As to Nicholas Nole, whose case it considered most doubtful, it thought that his equivocal conduct "was as likely to have come from a belief that it was a crime to sell the yeast and the cans to distillers as from being in fact any further involved in their business." But it assumed for purposes of decision that all furnished supplies which they knew ultimately reached and were used by some of the distillers. Upon this assumption it said, "In the light of all this, it is apparent that the first question is whether the seller of goods, in themselves innocent, becomes a conspirator with—or, what is in substance the same thing, an abettor of—the buyer because he knows that the buyer means to use the goods to commit a crime." And it concluded that merely because respondent did not forego a "normally lawful activity of the fruits of which he knew that others were making unlawful use" he is not guilty of a conspiracy.

The Government does not argue here the point which seems to be implicit in the question raised by its petition for certiorari, that conviction of conspiracy can rest on proof alone of knowingly supplying an illicit distiller, who is not conspiring with others. In such a case, as the Government concedes, the act of supplying or some other proof must import an agreement or concert of action between buyer and seller, which admittedly is not present

here. Cf. *Gebardi* v. *United States*, 287 U. S. 112, 121; *Di Bonaventura* v. *United States*, 15 F. 2d 494. But the Government does contend that one who with knowledge of a conspiracy to distill illicit spirits sells materials to a conspirator knowing that they will be used in the distilling, is himself guilty of the conspiracy. It is said that he is, either because his knowledge combined with his action makes him a participant in the agreement which is the conspiracy, or what is the same thing he is a principal in the conspiracy as an aider or abettor by virtue of § 332 of the Criminal Code, 18 U. S. C. § 550, which provides: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal."

The argument, the merits of which we do not consider, overlooks the fact that the opinion below proceeded on the assumption that the evidence showed only that respondents or some of them knew that the materials sold would be used in the distillation of illicit spirits, and fell short of showing respondents' participation in the conspiracy or that they knew of it. We did not bring the case here to review the evidence, but we are satisfied that the evidence on which the Government relies does not do more than show knowledge by respondents that the materials would be used for illicit distilling if it does as much in the case of some.[1] In the case of Alberico,

---

[1] The two Falcones who were in business as sugar jobbers were shown to have sold sugar to three wholesale grocers who in turn were shown to have sold some of the sugar to distillers. To establish guilty knowledge the Government relies upon evidence showing that the volume of their sales was materially larger during the periods of activity of the illicit stills; that Joseph Falcone was shown on two occasions, at one of which Salvatore Falcone was present, to have been in conversation with one of the conspirators who was a distiller, and on one occasion with another distiller conspirator who was his brother-in-law; that Joseph Falcone had been seen at the Venezia

as in the case of Nicholas Nole, the jury could have found that he knew that one of their customers who is an unconvicted defendant was using the purchased mate-

Restaurant which was patronized by some of the conspirators and knew its proprietor; and on two occasions Salvatore Falcone had visited the restaurant, on one to collect funds for the Red Cross and on another for a monument to Marconi.

Respondent Alberico was a member of a firm of wholesale grocers who dealt in sugar and five-gallon tin cans among other things. They sold sugar to wholesale grocers and jobbers. To establish Alberico's guilty knowledge the Government relies on evidence that his total purchases of sugar materially increased during the period when the illicit stills were shown to be in operation; that some of his sugar purchases from a local wholesaler were at higher prices than he was then paying others; that on the premises of one of the distillers there were found fifty-five cardboard cartons, each suitable for containing one dozen five-gallon cans, on one of which was stencilled the name of Alberico's firm; that on eight to ten occasions Alberico sold sugar and cans in unnamed amounts to Morreale, one of the defendant distillers who was not convicted, and on one occasion was overheard to say, in refusing credit to Morreale, "I could not trust you because your business is too risky."

Respondent Nicholas Nole was shown to be proprietor of Acme Yeast Company and also the Utica Freight Forwarding Company, to which one and one-half tons of K & M yeast was consigned by the seller. Wrappers bearing the distinctive marks of the Acme Yeast Company and K & M yeast, quantity not stated were found at one of the stills; and a K & M yeast container was found at another. To show guilty knowledge of Nicholas Nole the Government relies on the circumstance that he registered the Acme Yeast Company in the county clerk's office in the name of a cousin; that the order for the consignment of K & M yeast was placed in the name of an unidentified person; that Nole had been seen in conversation with some of the convicted distillers at a time when some of the illicit stills were in operation, and that on one occasion during that period he sold and delivered fifteen five-gallon cans of illicit alcohol from a source not stated.

Respondent John Nole was shown to be a distributor for the National Grain Yeast Company in Utica during the period in question. Yeast wrappers bearing the National labels were found at three of the stills. To show guilty knowledge of John Nole the Government

rial in illicit distilling. But it could not be inferred from that or from the casual and unexplained meetings of some of respondents with others who were convicted as conspirators that respondents knew of the conspiracy. The evidence respecting the volume of sales to any known to be distillers is too vague and inconclusive to support a jury finding that respondents knew of a conspiracy from the size of the purchases even though we were to assume what we do not decide that the knowledge would make them conspirators or aiders or abettors of the conspiracy. Respondents are not charged with aiding and abetting illicit distilling, and they cannot be brought within the sweep of the Government's conspiracy dragnet if they had no knowledge that there was a conspiracy.

The gist of the offense of conspiracy as defined by § 37 of the Criminal Code, 18 U. S. C. § 88, is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy. *Pettibone v. United States,* 148 U. S. 197; *Marino v. United States, supra; Troutman v. United States,* 100 F. 2d 628; *Beland v. United States,* 100 F. 2d 289; cf. *Gebardi v. United States, supra.* Those having no knowledge of the conspiracy are not conspirators, *United States v. Hirsch,* 100 U. S. 33, 34; *Weniger v. United States,* 47 F. 2d 692, 693; and one who

relies on evidence that he had assisted his brother Nicholas in unloading yeast at the Utica Freight Forwarding Co.; that he was a patron of the Venezia Restaurant; that on one occasion he was seen talking with Morreale, the unconvicted distiller, in the vicinity of a store in Utica, whose store it does not appear. On three occasions Morreale and another convicted defendant procured yeast in cartons and some in kegs at the store and on one occasion John Nole told the person in charge of the store to let them have the yeast; that John Noles' information return required by the Government of all sales of yeast in excess of five pounds to one person did not show in February or March, 1938, any sale of yeast to Morreale or any sale of keg yeast.

without more furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a party but of which the supplier had no knowledge. On this record we have no occasion to decide any other question.

*Affirmed.*