UNITED STATES of America,
Plaintiff-Appellee,

v.

Salvatore PIAMPIANO, alias John Balta,
Gordon Hall, Joseph Barragato and
Michael Amico, Defendants-Appellants.

No. 33, Docket 25486.

United States Court of Appeals
Second Circuit.

Argued Oct. 7, 1959.

Decided Nov. 6, 1959.

John P. MacArthur, Asst. U. S. Atty.,
Western District of New York, Buffalo,
N. Y. (John O. Henderson, U. S. Atty.,
Buffalo, N. Y., and Roderick M. Cunningham, Asst. U. S. Atty., Rochester, N. Y.,
on the brief), for plaintiff-appellee.

Charles E. Steinberg, Rochester, N. Y.,
for defendants-appellants Hall and Barragato.

George J. Skivington, Rochester, N. Y.,
for defendant-appellant Amico.

Before LUMBARD, WATERMAN and
FRIENDLY, Circuit Judges.

LUMBARD, Circuit Judge.

Michael Amico, Gordon Hall and Joseph Barragato appeal from their conviction for conspiracy to violate the Internal Revenue Laws in violation of 18
U.S.C. § 371. Defendants Hall and Barragato also appeal their convictions upon
eight substantive counts charging specific violations of the Internal Revenue
Laws concerning the manufacture, sale
and possession of illegal alcohol and the
possession and operation of an unlicensed
still. A fourth convicted defendant has
withdrawn his appeal.

Appellant Amico contends that there was insufficient evidence of his participation in the conspiracy to warrant the submission of his case to the jury. We do not agree. A summary of the evidence elicited at trial shows that there was ample evidence from which a jury might have found Amico guilty of conspiring with the other defendants.

In February 1957, Amico, a partner in a produce business dealing primarily in fresh fruits and vegetables, talked with one Boslov, manager of Eber Brothers, a wholesale company dealing in foodstuffs and explained that he wished to purchase sugar in large quantities from Eber Brothers. Theretofore Amico Brothers had done several thousand dollars worth of business in fruits and vegetables with Eber Brothers each week, but only on a few occasions had they purchased as much as a single bag or two of sugar to accommodate a good customer. Amico stated that he wished the sugar purchases to be handled separately from the regular Amico Brothers account, because he was not getting along well with his partners and wished to divert the entire profits to himself. He told Boslov that he would pay in cash rather than by check drawn on Amico Brothers and would pick up the sugar in the truck of a confectionery store to which the sugar was being resold rather than in an Amico Brothers truck. During the ensuing months this plan was carried out. Amico purchased at approximately monthly intervals a ton or more of white granulated sugar; each invoice was made out to a confectionery and not to Amico Brothers, and was paid in cash by Amico; the sugar was loaded in an unmarked red stake body truck driven by Amico, but not belonging to his partnership.

During the period from May 28 until June 11, 1957, Treasury agents several times saw a red stake body truck, similar to that which Amico used to pick up the sugar from Eber Brothers, come and go from the site of a suspected still at 182 East Avenue in Rochester. On these occasions the truck was driven by one or another of the other three appellants and in one instance defendant Hall was seen to drive the truck to the Amico Brothers office and go in. On June 11 Treasury agents raided the building at 182 East Avenue and found an operating still; the three defendants other than Amico were at the site and were arrested. The red truck, which had been observed to enter the building a short time earlier, was found to contain nineteen one hundred pound bags of sugar, and sixteen more bags were stacked a few feet away. Earlier the same morning Amico had purchased from Eber Brothers thirty-five one hundred pound bags of sugar of the same kind and had carried them away in a similar red stake body truck.

The government also introduced evidence at trial of two conversations, one between Amico and Boslov in February 1958, and a second between Amico and Conklin, an employee of Eber Brothers, in the spring of 1958, subsequent to a grand jury investigation of the matter. Boslov testified that Amico had told him that the sugar had gone to the still. He also said Amico had claimed that the still was not a part of a larger operation, but was "just a local deal" and that such a still could be set up for about $1,500. Conklin testified that Amico had called him and offered him money if he would reverse his testimony given before the grand jury.

Amico invokes United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128, affirming 2 Cir., 1940, 109 F.2d 579, for the proposition that a mere supplier, even one aware of the illegal purpose of his purchaser, cannot be held as a co-conspirator. But here Amico did much more than act as a supplier. Contrary to the facts in Falcone, Amico deviated from his usual line of business in purchasing large quantities of sugar. He did not sit back and simply accept orders that came his way but began dealing in a commodity almost entirely new to him and in a manner quite different from his other business transactions.

Amico was willing to and did take measures to make it difficult to trace the sugar. The jury might reasonably have

found that the secretive manner of his purchases was indicative of an intent actively to further the conspiracy. Direct Sales Co. v. United States, 1943, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674. His conduct, it could be found, showed an interest in seeing that the illegal operation prospered and continued and that it would avoid detection.

■ Finally, from the testimony of Boslov and Conklin about their conversations with Amico subsequent to the raiding of the still, the jury could have concluded that Amico had an extensive knowledge of the illegal operation, not of the sort that a passive participant would be likely to have, and that Amico was conscious of his guilt. See United States v. Freundlich, 2 Cir., 1938, 95 F.2d 376, 378–379. We hold, therefore, that it was proper for the district court to have submitted the case to the jury and that there was sufficient evidence for the jury to have found that Amico was a participant in the conspiracy. See United States v. Pandolfi, 2 Cir., 1940, 110 F.2d 736, certiorari denied 1940, 310 U.S. 651, 60 S.Ct. 1103, 84 L.Ed. 1416.

■ Appellant Barragato urges in support of his argument for reversal that since the overt act specifically alleged in the indictment against him was not proved, he may not be convicted of conspiracy. However, evidence of numerous acts by other of the defendants in furtherance of the conspiracy was brought forth and it has long been the law that proof of an overt act by any one of the conspirators is sufficient to satisfy the requirement as to all. Bannon v. United States, 1895, 156 U.S. 464, 468–469, 15 S.Ct. 467, 39 L.Ed. 494. We therefore reject appellant's contention. The act of one conspirator is imputed to the other conspirators and becomes the act of all. Palmero v. United States, 1 Cir., 1940, 112 F.2d 922, 926.

■ Defendants Hall and Barragato raise one further contention. They claim that they were deprived of a fair trial by the failure to grant them an opportunity to cross-examine a government witness who testified upon direct examination and thereafter was temporarily excused. Upon the failure of the government to recall this witness later, the trial judge instructed the jury, at the request of defense counsel, to disregard the witness' testimony. Considering the nature of the witness' testimony, we see no reason to believe that the jury failed to heed this instruction. In any event, the defendants were content to have the court instruct the jury to disregard the testimony. Having acquiesced in this procedure, the appellants will not be heard to complain after the verdict has gone against them. Had they objected at the time other procedures would have been available, such as the recall of the witness for cross-examination.

Affirmed.