UNITED STATES of America, Appellee,

v.

Anthony CAMPISI, Edward Carmine Coppolla, Anthony J. Donatiello and Alfred Sanantonio, Appellants.

No. 371, Docket 27447.

United States Court of Appeals Second Circuit.

Argued June 13, 1962.

Decided July 23, 1962.

Samuel D. Bozza, Newark, N. J., for appellant Campisi.

David Markowitz, New York City, for appellant Coppolla.

Michael A. Querques, Orange, N. J., for appellant Donatiello.

Michael P. Direnzo, New York City, for appellant Sanantonio.

Sheldon H. Elsen, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, Arnold N. Enker, Thomas F. Shea, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before FRIENDLY, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Appellants appeal from their convictions of aiding and abetting the crime of forging and uttering stolen United States Government bonds in violation of 18 U.S.C. § 495. See 18 U.S.C. § 2. We affirm all the convictions.

In addition to the appellants, Herbert Levine, Meyer Parks and Thomas Bartkovsky, were indicted as co-defendants. They pleaded guilty and testified for the government.

On the basis of the evidence introduced by the government, the jury could find the following facts: The bonds that were the subject of the indictment were stolen from the homes and offices of a series of private persons. They were cashed between May, 1960 and January, 1961, mainly in banks located in small towns, by persons who posed as the registered owners. Sanantonio and Coppolla sold stolen bonds to Donatiello, Campisi and, for a short period, Levine, for an agreed percentage of the face value of the bonds. Although payment to them for the bonds was not expressly conditioned on the successful negotiation of the bonds, some, at least, of the bonds were sold on credit. (The credit aspect of the transaction suggests that if the bonds could not be resold Sanantonio and Coppolla would not be paid.) Campisi, Donatiello and Levine relied on passers to resell the bonds and worked closely with the passers, Parks, Bartkovsky and, at one time Levine, to achieve this end. Donatiello and Campisi would supply the passers with bonds and with blank drivers' licenses on which validating stamps had been forged. Each passer

inserted his own physical characteristics and signed the name of the registered owner of the bond. The passers and the middleman would drive to a town in which they were not known and select a local address and enter it on the license. The passer would then go to a local bank, forge the endorsements and present the stolen bonds for payment, using the driver's license as identification. Immediately after leaving the bank the passer would turn the proceeds over to the middleman and receive an agreed upon percentage.

None of the appellants challenges the sufficiency of the evidence to establish these facts and his own role in the general scheme. Levine and Parks testified that they passed stolen bonds for appellant Donatiello and described in detail the circumstances of the transactions. Bartkovsky gave similar testimony with respect to Campisi. Levine testified that Sanantonio delivered a large amount of bonds to him or Donatiello in the presence of Coppolla and that the price was fixed in conversation between Sanantonio and Coppolla on the one hand and Levine and Donatiello on the other. Levine testified that, at a later date, Coppolla and Sanantonio delivered $20,000 worth of stolen bonds to him and Donatiello for which they received immediate payment. Subsequently, Coppolla sold Levine additional bonds, in one instance after Levine made the initial contact through Sanantonio.

■ The first question presented by appellants Coppolla and Sanantonio is whether the evidence sufficiently connects them with the substantive crime to support a charge of aiding and abetting. 18 U.S.C. § 2. They argue that they merely sold the stolen bonds to Campisi, Donatiello and Levine for an established price and were not concerned with the success or failure of subsequent attempts to pass the bonds unlawfully. In support of the proposition that this conduct does not amount to a sufficient "stake in the venture" to support the charge, they cite United States v. Falcone, 109 F.2d 579 (2d Cir.), aff'd, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940) and United States v. Peoni, 100 F.2d 401 (2d Cir. 1938). We do not find these cases applicable.

In United States v. Falcone, supra, the defendant, in the normal course of his business, sold quantities of sugar to certain persons knowing that it would be used in the illegal production of liquor. He was indicted for aiding and abetting the operation of illicit stills. In this court, Judge Learned Hand framed the question as follows: "whether the seller of goods, in themselves innocent, becomes * * * an abettor of—the buyer because he knows that the buyer means to use the goods to commit a crime." 109 F.2d at 581. The court answered this question in the negative, holding that "[i]t is not enough that he does not forego a normally lawful activity, of the fruits of which he knows that others will make an unlawful use; he must in some sense promote their venture himself, make it his own, have a stake in its outcome." Id. The Supreme Court affirmed. The difference between Falcone and the case at bar is manifest, since stolen bonds are assuredly not "goods in themselves innocent * * *" and appellants are not prosecuted for failure to "forego a normally lawful activity." The court in Falcone evidently thought it undesirable to charge a merchant with the unlawful use a customer may make of his product, although he may know of the unlawful use, when he is selling the goods he normally sells at the price he normally charges and he is not involved in the subsequent wrongdoing. See United States v. Piampiano, 271 F.2d 273 (2d Cir. 1959). Falcone has been limited

"to its strict facts—the case of a supplier of goods, innocent in themselves, who does nothing but sell those goods to a purchaser who, to the supplier's knowledge, intends to and does use them in the furtherance of an illegal conspiracy." (United States v. Tramaglino, 197 F.2d 928, 930 (2d Cir.), cert. denied, 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670 (1952).)

It is clearly inapplicable to the case at bar.

In United States v. Peoni, 100 F.2d 401 (2d Cir. 1938), the defendant was charged with aiding and abetting the possession of a remote vendee of counterfeit money. In reversing the conviction the court relied on the fact that the principal, i. e. the individual whose possession defendant was charged with abetting, was not a vendee of the defendant. The court expressly left open the question whether the same result would obtain if the immediate vendee was charged with possession, a question closely analogous to that presented in this appeal.

Much closer to the facts presented by the case at bar than either Falcone or Peoni is Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L. Ed. 1674 (1943). There, defendant, a wholesale drug company, sold large amounts of narcotic drugs to a physician with knowledge that he in turn was distributing a substantial portion of them illegally. The Supreme Court sustained a conviction of conspiracy with the physician to dispense drugs in violation of the Harrison Narcotic Act, 26 U.S.C. §§ 2553, 2554 (1946)* against an attack based on Falcone. The court distinguished Falcone primarily on the basis of the nature of the articles sold in the respective cases.

"The difference is like that between toy pistols or hunting-rifles and machine guns. All articles of commerce may be put to illegal ends. But all do not have inherently the same susceptibility to harmful and illegal use. Nor, by the same token, do all embody the same capacity, from their very nature, for giving the seller notice the buyer will use them unlawfully. Gangsters, not hunters or small boys, comprise the normal private market for machine guns. So drug addicts furnish the normal outlet for morphine which gets outside the restricted channels of legitimate trade." Direct Sales Co. v. United States, supra, at 710, 63 S.Ct. at 1268.

The facts of the case at bar are even more strongly against appellants than those in Direct Sales, because here the initial possession by appellants was unlawful and the sales could not be legitimate regardless of the volume of the purchaser. The "element of personal law-breaking and clandestine selling," as well as the implicit conditioning of future business of the same nature and at least part payment for past transactions on successful passing, "furnished the required 'stake in the success of the venture' that the Falcone case demanded." United States v. Tramaglino, supra, 197 F.2d at 931. United States v. Piampiano, 271 F.2d 273 (2d Cir. 1959) holds that *any* deviation from the strict facts of Falcone, even a lawful departure from the normal course of business or cooperation in concealing delivery, is sufficient to connect the vendor with the criminality of the vendee. Cf. United States v. Russo, 284 F.2d 539, 541, n. 3 (2d Cir. 1960). Note, Falcone Revisited: The Criminality of Sales to an Illegal Enterprise, 53 Colum.L.Rev. 228 (1953).

We conclude that the evidence amply supports the charges of aiding and abetting against Coppolla and Sanantonio. The trial court's charge on the elements that constitute the crime of aiding and abetting was wholly in conformity with prevailing law.

■ Appellants Campisi, Coppolla and Sanantonio raise certain questions about the alleged undue length of the indictment, prejudicial joinder and the denial by the trial court of motions to sever. We do not reach the merits of these contentions because we hold that the objections were waived in the court below.

Rule 12 of the Federal Rules of Criminal Procedure, 18 U.S.C., provides in pertinent part:

"(b) The Motion Raising Defenses and Objections.

\*    \*    \*    \*    \*    \*

---

* Now 26 U.S.C. §§ 4704, 4705 (1958).

"(2) *Defenses and Objections Which Must Be Raised.* Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver.

\* \* \* \* \* \*

"(3) *Time of Making Motion.* The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter."

Here the pleas were entered in November, 1961 and pursuant to Rule 12(b) (3) the district judge postponed the date on which motions under Rule 12(b) (2) were to be made until December 4, 1961. At that time no motions directed to the length of the indictment, joinder or severance were made. Under the express provision of 12(b) (2) the "[f]ailure to present [the] objection \* \* \* constitutes a waiver thereof, \* \* \*."

The appellants moved for severance on the morning the trial was scheduled to begin. No attempt to show cause justifying relief from the waiver was made except to point to the press of other engagements and the failure of predecessor counsel to make a timely motion. There was no claim that anything new bearing on the proper disposition of the question had been learned after the scheduled motion date. Indeed, in introducing the motion, which was later joined by counsel for Campisi and Coppolla, counsel for Sanantonio stated that the court would be fully justified in denying it as untimely. The record shows that the court did exactly that. Therefore the objections are not properly before this court as they might have been if the lower court had granted relief from the waiver and denied the motion on the merits.

■ In order to prove the offense charged the government was required to establish that the bonds which were forged had been stolen, although it was not necessary to connect the defendants directly with the thefts. The appellants were willing to concede that the bonds were stolen, presumably in order to keep from the jury evidence of violent thefts which they thought might prejudice the jury against them on other issues. The government expressed its willingness to enter into a stipulation of this general nature, but the parties were not able to agree on the exact language. Campisi contends that the government was obligated to enter the stipulation and that it arbitrarily refused to do so with the result that much prejudicial evidence was needlessly paraded before the jury. A reading of the relevant portions of the transcript leaves much doubt that it was the government that refused to stipulate, but in any event the government had the right to present evidence that the bonds were stolen in the way it wished to present such evidence, not as appellants would have chosen to do so.

■ Appellants' remaining contentions are equally without merit. Since the conspiracy counts were amply proved and were dismissed only to simplify the issues, the declarations of the co-conspirators were admissible. United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945). The government was within its rights in objecting to the false statement in the summation of counsel for Campisi that his client "has never been convicted of a crime in his life." Cf. United States v. Universita, 298 F.2d 365 (2d Cir.), cert. denied, 82 S.Ct. 1598 (1962). The court correctly charged on the treatment to be accorded the testimony of an accomplice and it was not error to refuse to repeat the point in the language suggested by the defense. It was not error to send to the jury the bonds that were the subject of counts that were later dismissed because no motion to strike

them was made and because, as proof that Campisi had committed similar acts, they remained admissible to show his knowledge, motive and intent. United States v. Bollenbach, 147 F.2d 199, 200 (2d Cir. 1944), rev'd on other grounds, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

Affirmed.