**UNITED STATES of America,**
Appellee,

v.

**William Lawrence LEMONS and Grady Ingram, Appellants.**

No. 8537.

United States Court of Appeals Fourth Circuit.

Argued March 29, 1962.

Decided Oct. 5, 1962.

Certiorari Denied Jan. 21, 1963.

See 83 S.Ct. 551.

R. R. Ryder, Richmond, Va. (Martin & Ryder, Richmond, Va., on the brief), for appellants.

William H. Murdock, U. S. Atty. (R. Roy Mitchell, Jr., Asst. U. S. Atty., Henry C. Stockell, Jr., Regional Counsel, William P. Crewe, Asst. Regional Counsel, and Eugene B. Smith, Attorney, Internal Revenue Service, Atlanta, Ga., on the brief), for appellee.

Before SOPER and BOREMAN, Circuit Judges, and FIELD, District Judge.

FIELD, District Judge.

William Lawrence Lemons and Grady Ingram, together with Lloyd Coy Webb, Roy Lauren Webb, Marshall Gates Martin, Thomas Lee Carter, Arnold Anderson Handy, Vandal Plummer Shrively and Winford Watlington, were indicted for conspiracy to violate the Internal Revenue Laws of the United States, namely, to unlawfully remove and conceal distilled spirits with the intent to evade and defeat the assessment and collection of tax thereon [1] and to unlawfully and willfully transport, possess, buy, sell and transfer distilled spirits in containers which failed to have the appropriate revenue stamps thereon.[2] The indictment was returned in the Middle Judicial District of North Carolina and alleged 22 overt acts in that Judicial District as well as the Eastern District of North Carolina, the Western District of North Carolina and the Western District of Virginia. All of the nine defendants were convicted upon the jury's verdict, and the appellants, William Lawrence Lemons and Grady Ingram have appealed their conviction.

It would be almost impossible and would serve no useful purpose to detail all of the evidence relative to the operations of this extensive whiskey ring, but it clearly establishes the existence of the criminal conspiracy charged in the indictment. The evidence discloses a not unfamiliar pattern involving the use of a variety of secondhand motor vehicles, fictitious vehicle registrations and the indiscriminate transfer of license plates from one vehicle to the other. The evidence also discloses that a number of vehicles were, to use the vernacular, "souped up" for their use in the illegal activities of the conspirators. Among other details, Cadillac and Lincoln engines had been installed in Fords or other cars of comparable weight, as well as built-up springs, lifting blocks, and cut-off switches which permitted the driver to cut off the taillights independently of the front lights of the vehicle, thereby frustrating any police officers who might be in pursuit.

The primary contention of the appellant Lemons is to the effect that at most the evidence does no more than place him in the position of one who performed services, innocent in themselves, upon vehicles of parties whom he might have known intended to use such vehicles in criminal activities. From this he argues that his conviction should be reversed upon the principle set forth in the landmark case of United States v. Falcone, 109 F.2d 579 (2d Cir. 1940). However, a review of the evidence relative to Lemons' activities fails to place him in such a favorable posture. We might observe at this point that upon the argument of this case, counsel for appellant vigorously challenged the accuracy of a number of references to the evidence set forth

[1]. 26 U.S.C. § 7206(4).

[2]. 26 U.S.C. §§ 5205(a) (2) and 5604(a) (1).

in the Government's brief. Accordingly, we have carefully reviewed the entire record and transcript with respect to the activities of the appellants in this case.

This review of the evidence shows that Lemons operated a business in Draper, North Carolina, for the service and repair of motor vehicles, the business being conducted under the name of W. L. Lemons' Garage. Admittedly, he was an expert mechanic and had a widespread reputation for his ability to install high-speed motors, heavy-duty springs and cutoff switches on motor vehicles. Draper is located some 20 miles from Danville, Virginia, which was the home of defendant Lloyd Coy Webb. Ferrum, Virginia, is some 70 miles from Danville and was the home of the defendant Grady Ingram. Providence, North Carolina, the home of Roy Lauren Webb, is seven miles from Danville. The defendant Marshall Gates Martin lived in Martinsville, Virginia, which is 35 miles from Danville. The defendant Thomas Lee Carter lived in Kentuck 15 miles from Danville. The defendant Vandall Plummer Shrively lived in Axton, Virgina, which was 25 miles west of Danville. In spite of the somewhat extensive geographical area covered by the residences of the defendants, for some period of time, including the period covered by the indictment, the evidence shows that they regularly, severally or in groups, frequented the garage of the appellant Lemons at Draper. He performed work on vehicles either owned or driven by them and on a number of occasions these vehicles were parked either at his garage or at his residence. Prospective customers for contraband whiskey were advised that they could contact the defendants by calling Lemons' garage. It is true that the telephone at the garage was a public telephone, but it was shown in the evidence that a large number of calls emanating from this phone were directed to the homes of the various conspirators.

A 1955 Mercury automobile registered in the name of W. L. Lemons' Garage was used almost constantly by the defendants Handy and Lloyd Coy Webb for a considerable length of time. Title to this automobile had been transferred to Lemons by Esther Huffine Griffin on June 23, 1959. Mrs. Griffin testified that she was a lifelong friend of Lemons and that she had originally taken title to the car in her name on behalf of her son. She testified this was done because her son was under age although she also testified that her son never drove the car. She further stated that Lemons had possession and use of the car prior to the time title was transferred to him. Lemons' explanation of the use of the car by Handy and Webb was that he had sold the car to Handy in March of 1961. However, no evidence of any transfer of title was introduced by the defendant and he was unable to state that title had ever been transferred. On August 26, 1961, this vehicle was delivered to Johnson Chevrolet, Inc., also of Draper, as a trade-in on a 1956 Ford which was purchased by the defendant Lloyd Coy Webb.

The evidence shows that on one occasion in March, 1961, Lemons accompanied the defendant Arnold Anderson Handy to the insurance office of O. L. Cherry to obtain liability insurance on a 1959 Chevrolet dump truck. This truck was later seized while transporting illicit whiskey in the vicinity of Creedmore, North Carolina.

On November 23, 1960, the defendant Marshall Gates Martin was arrested while driving a 1959 Ford automobile which was equipped with a high-speed motor, built-up rear springs and a cutoff switch for the rear lights. The defendant Roy Lauren Webb posted bond for Martin, and Lemons was called to pick up the car at Yancyville, North Carolina, and take it to Draper. Title to this vehicle was registered to Lloyd Coy Webb in the State of Virginia and to Walter Thomas Barksdale in the State of North Carolina. This vehicle was later observed parked at Lemons' residence although, in the meantime, it had been used and driven by some of the conspirators.

Another vehicle which appeared prominently in the evidence was a 1961 Ford which was registered in the name of Marcella Ingram, wife of the appellant Grady Ingram. The certificate of title to this vehicle disclosed a lien in favor of the appellant Lemons. This automobile was frequently driven by Lloyd Coy Webb and on a number of occasions was parked at his home in Danville. In May of 1961, this Ford was parked at Lemons' garage and an unidentified man carried a car seat from inside the garage and placed it in the Ford. It was testified that this car seat was later found at the home of Thomas Lee Carter, together with four other automobile seats which were used to conceal illicit liquor.

On this evidence the jury was justified in finding that Lemons' activities went far beyond the mere rendering of innocent services to the other conspirators. It certainly was reasonable for the jury to infer that the conduct of Lemons demonstrated an interest in seeing that the illegal operation prospered and continued, and that it would avoid detection. See United States v. Piampiano, 271 F.2d 273 (2nd Cir. 1959); Call v. United States, 265 F.2d 167 (4th Cir. 1959). We are of the opinion that unquestionably the evidence of Lemons' activities was sufficient to prove his participation in the conspiracy. "A conspiracy is properly thought of as a partnership in criminal purposes, * * *; and those who, with knowledge that such partnership exists, aid or assist in carrying out its criminal purposes make themselves parties thereto and are equally guilty with the original conspirators." Orton v. United States, 221 F.2d 632 (4th Cir. 1955).

Lemons saw fit to take the stand in his own behalf. A review of his testimony indicates that as a witness he was evasive, equivocal and contradictory. The jury had an opportunity to observe him on the witness stand and to weigh his testimony along with the other evidence in the case. Upon this evidence the jury made a determination of his guilt. This determination was supported by substantial evidence and in our opinion should be sustained by this Court. As was stated in Glasser v. United States, 315 U.S. 60, at 80, 62 S.Ct. 457, at 469, 86 L.Ed. 680:

"It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. United States v. Manton, [2 Cir.] 107 F.2d 834, 839, and cases cited. Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'"

With respect to the appellant Ingram, in addition to the use of the Ford vehicle registered in the name of his wife to which we have heretofore adverted with respect to Lemons, the record is replete with instances of Ingram's association with the other conspirators. While association in itself is not sufficient to convict a man of conspiracy, the activities of Ingram, like those of Lemons, go far beyond the limits of mere association. On at least one occasion he discussed the sale of illicit liquor with an undercover agent of the Government, and a few days thereafter the defendant Roy Webb contacted the agent relative to the subject matter of this discussion. On another occasion he was observed taking a large sum of money from some of the other conspirators. Taking the evidence in its entirety we are of the opinion that the verdict of the jury with respect to Ingram was well warranted. "Ordinarily conspiracies can be established only by the acts and conduct of the conspirators and the inferences to be drawn therefrom. * * * Generally convictions will be sustained if the circumstances, acts and conduct of the parties are of such character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." Jones v United States, 251 F.2d 288 (10th Cir.

1958); Simpson v. United States, 11 F.2d 591 (4th Cir. 1926).

In our opinion the verdict against Ingram represented a well-founded conclusion of reasonable men and his conviction as well as that of Lemons should be affirmed.

Affirmed.