**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Keith Brownell CHAMLEY, Defendant-
Appellant.**

**No. 15646.**

United States Court of Appeals
Seventh Circuit.

April 14, 1967.

58

John J. Cleary, Chicago, Ill., Keith B. Chamley, St. Louis, Mo., Michael J. Mc-Ardle, Chicago, Ill., for appellant.

Carl W. Feickert, U. S. Atty., Arthur Jay Ginsburg, Joel A. Kunin, Asst. U.

S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before MAJOR, Senior Circuit Judge, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

■ Keith Brownell Chamley and others [1] were charged in a one-count indictment with conspiracy [2] to violate that portion of 18 U.S.C. § 2314 prohibiting the unlawful and fraudulent interstate transportation of forged securities, knowing them to have been forged.[3] Chamley appeals from a judgment of conviction and a sentence of five years' imprisonment which followed a jury verdict of guilty.

The forgery and interstate transportation of four checks and two money orders were proved. The checks, each in the amount of $86.40, were forged by James Lynch. They were drawn on the Katz Dry Goods account of a St. Louis, Missouri bank and cashed by Larry Lynch at supermarkets in Belleville and East St. Louis, Illinois during October 1964. One money order, in the amount of $100, was completed by Jo Ann Ferris; the other, for $93.32, was made out by Larry Lynch. The money orders were drawn on the Travelers Express Company, Minneapolis, Minnesota and were cashed by John Whaley in Collinsville, Illinois during October 1964.

■ The defendant does not challenge the proof of the forgeries and the interstate movement, but contends that the evidence was insufficient to establish his membership in a conspiracy to accomplish the unlawful objectives. The evidence shows that Whaley, James Lynch, and Larry Lynch appeared together at the defendant's home in St. Louis sometime in October 1964. On this occasion the defendant sold Whaley at least one of the money orders later forged.[4] Subsequently, at a meeting in a tavern near Collinsville, the defendant sold the four blank checks, later forged, to James and Larry Lynch for approximately $70. In addition to these sales, the defendant provided Whaley and the Lynches with a check protector to assist them in completing the instruments. We think the unlawful agreement charged could be inferred by the jury from these facts.

■ The defendant's participation in a conspiracy to forge and initiate the interstate movement of the checks and money orders arises from the circumstances of the defendant's possession and sale of these instruments. The checks and money orders, on their face, were not his to possess and sell. The defendant nevertheless met with others interested in using the instruments unlawfully and made several sales at substantial sums. His knowledge of the intended disposition of the items cannot be doubted. The defendant, relying principally upon United States v. Falcone, 109 F.2d 579 (2d Cir.), aff'd, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940), argues that his knowledge of the unlawful use to which the instruments would be put is not enough to make him a coconspirator, that he must be shown to have a "stake in the venture." Aside from the fact that the items sold by the defendant, unlike those involved in *Falcone*, were for all practical purposes incapable of being put to a lawful use, more than mere knowledge by the defendant of an unlawful agreement among others was proved. The defendant actively cooperat-

1. John E. Whaley was named as a defendant and as a coconspirator. James Lynch, Jr., Larry C. Lynch, Sr., and Jo Ann Ferris were named as coconspirators but not as defendants.

2. 18 U.S.C. § 371.

3. The indictment, phrased substantially in these terms, adequately charged that the acts forming the object of the conspiracy were done with the requisite intent. Walker v. United States, 342 F.2d 22, 27 (5th Cir.), cert. denied, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965).

4. Whaley first testified that both money orders were purchased at this meeting for approximately $95. He later testified that he bought one of the money orders from the defendant in Oklahoma on another occasion.

ed with those who fraudulently completed and transferred the checks and money orders by giving them the check protector, a device which assisted them in creating an indicia of genuineness on the fruits of their labor. From this fact, and from his financial interest in the sales consummated, the defendant's membership and participation in the conspiracy charged was a permissible inference.[5] Cf., Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943); United States v. Campisi, 306 F.2d 308 (2d Cir.), cert. denied, 371 U.S. 925, 83 S.Ct. 293, 9 L. Ed.2d 233 (1962); Bartoli v. United States, 192 F.2d 130 (4th Cir. 1951).

■ The defendant contends that he was denied a fair trial because the Government improperly influenced the jury by various references to the defendant's association with his alleged coconspirators. He first complains, in substance, that the Government was permitted to impeach its own witnesses. Whaley, James Lynch, and Larry Lynch testified for the Government. On direct examination each of them stated that he was presently serving a federal prison sentence.[6] In addition, Whaley testified that he was convicted of conspiracy to violate "the federal interstate check forgery law" and that the defendant was a co-defendant on the same charge.[7] The defendant made no objection to these statements and did not request a limiting instruction to the jury. In fact, the defendant's counsel expressly invited the

Government to elicit the testimony of which he now complains. During his opening statement defense counsel stated that the Government proposed to prove its case "from the lips of convicted felons in this court, men who have admitted their guilty (sic), men who are presently incarcerated and in the complete charge of the United States Government." Under the circumstances, the defendant is not in a position to claim error on appeal.

■■ In any event, we think the testimony was properly admitted. The Government is generally permitted to bring out the criminal record of its witnesses on direct examination. "The matter of informing court and jury about information of such clear relevance as the criminal record of a witness called by the prosecution is not something which is to be reserved for the pleasure and strategy of the defense." United States v. Freeman, 302 F.2d 347, 350 (2d Cir. 1962), cert. denied, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963). The jury may also be apprised of the fact that a co-defendant has pleaded guilty, either by instructions from the court, United States v. Dardi, 330 F.2d 316, 332–333 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964), or by the testimony of a Government witness, United States v. Aronson, 319 F.2d 48, 51 (2d Cir.), cert. denied, 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164 (1963). Cf., United States v. Jannsen, 339 F.2d 916, 919 (7th Cir. 1964). "The claim that it

---

5. The defendant contends that he was prejudiced by a variance between the single conspiracy charged and the proof of multiple conspiracies. The contention is without merit. Even if, as the defendant suggests, the evidence could be viewed as revealing distinct "money order" and "check" conspiracies, the evidence would show the defendant to be a member of both, and no prejudice could thereby result.

6. Larry Lynch testified that he was an inmate in a federal prison. On cross-examination he stated that he pleaded guilty

to a charge of "interstate transportation of falsely made and forged documents and securities." James Lynch testified that he was serving a sentence for "interstate transportation of stolen securities." He added later that his sentence was not the result of the transactions for which the defendant was on trial, but was related to another matter.

7. On cross-examination, Whaley stated that this was the charge for which the defendant was on trial and that he, Whaley, had pleaded guilty.

was improper for the government to bring out on direct examination of its key witnesses that they had already pleaded guilty to the conspiracy is not convincing. The proponent of a witness need not allow such information damaging to his credibility to be first established on cross-examination. * *" United States v. Mahler, 363 F.2d 673, 678 (2d Cir. 1966).

The defendant also objects to certain comments of the Government prosecutor during closing argument to the jury. He is particularly critical of the prosecutor's statements, referring to the defendant and his alleged coconspirators, that "birds of a feather flock together" and that he, the prosecutor, "honestly believe(s) that [the defendant] is just as guilty" as Whaley and the Lynches. No objection was made to these statements. The error, if any,[8] was waived. Certainly, there was no "plain error" subject to recognition on appeal under Rule 52(b) of the Federal Rules of Criminal Procedure.

Finally, the defendant complains that the trial court did not give instructions relating to the problem of guilt by association and the distinction between a conspiracy and a substantive offense forming the object of a conspiracy. No instruction on guilt by association was requested. The instructions given adequately informed the jury that the defendant could be found guilty only of the crime charged and that the defendant was charged only with conspiracy.

The judgment is affirmed.

Messrs. John J. Cleary and Michael J. McArdle of the Illinois bar deserve our appreciation for their representation of the defendant as appointed counsel in this appeal.

8. Compare United States v. D'Antonio, 362 F.2d 151, 155 (7th Cir.), cert. denied, 385 U.S. 900, 87 S.Ct. 204, 17 L.Ed.2d 131 (U.S. Dec. 18, 1966) (No. 394), with

Orebo v. United States, 293 F.2d 747 (9th Cir. 1961), cert. denied, 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1962).