GORSUCH, Circuit Judge,
concurring.
I am pleased to join the court’s opinion and write only to add that if the OCCA really means to suggest that strict liability offenses can trigger the death penalty, it will face its problems. Addressing Mr. Williams’s direct' appeal and the larger question of accessory liability in murder cases, the OCCA “overrule[d]” its earlier precedents requiring the government to prove that the defendant personally intended the death of the victim; mentioned no substitute mens rea; and stated that when it comes to proving actus reus, “only slight participation is needed” to transform a spectator into an accessory to murder subject to a capital charge. Williams v. State, 188 P.3d 208, 225-26 & n. 18 (Okla. Crim.App.2008) (quoting Powell v. State, 995 P.2d 510, 524 (OMa.Crim.App.2000)). Under this formulation it seems OMahoma could seek to execute someone just because he sold a gun to a buyer who later used it for murder. Even if the seller was lawfully in the business of selling firearms. Even if the seller didn’t know the buyer’s plans. Even if the seller wasn’t in any way recMess about the possibility that someone would get hurt. Oddly, too, on this account accessory liability for murder is strict though principal liability still requires proof of mens rea in OMahoma.
It’s hard to imagine the OCCA meant such a revolution in accessory liability in murder cases. Hopefully (surely) the court will soon identify an appropriate mens rea. But if it really meant what it said, it will find itself on the wrong side of Supreme Court authority. In Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the Court read the Eighth Amendment to prohibit as “cruel and unusual punishment” the execution of an accessory to murder in the absence of proof that he “attempt[ed] to Mil, or intend[ed] that a Mlling take place or that lethal force ... be employed.” Id. at 797, 102 S.Ct. 3368. In Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Court relaxed this rule somewhat, allowing a state to execute an accessory on a lesser mens rea showing — “reckless indifference to human life” — so long as the defendant was a “major participant” in the principal’s criminal activities that led to the homicide. Id. at 158 & n. 12, 107 S.Ct. 1676. But I am unaware of any Supreme Court case law permitting states to execute accessories on a strict liability basis, without any showing of mens rea.
Indeed, executing someone for a strict liability offense would represent not only a highly “unusual” punishment but one inimical to the common law at the time of the founding. See, e.g., 1 Matthew Hale, The History of the Pleas of the Crown 38 (1736) (“[I]t is the will and intention, that regularly is required, as well as the act, and event, to make the offense capital.”); Francis Bacon, The Elements of the Common Lawes of England 36 (1630) (“In capitall causes in favorem vitae, the law will not punish in so high a degree, except the malice of the will and intention appeare.... ”); see also Francis Bowes Sayre, Mens Rea, 45 Harv. L.Rev. 974, 993 (1932) (“By the second half of the seventeenth century, it was universally accepted law that an evil intent was as necessary for *1220 felony as the act itself.”); Paul J. Larkin, Jr., Strict Lmbility Offenses, Incarceration, and the Cruel and Unusual Punishments Clause, 37 Harv. J.L. & Pub. Pol’y 1065 (2014).
Of course, in relatively recent times strict liability has insinuated its way into tort law and even the lower rungs of the criminal law, especially statutory and regulatory offenses that impose financial penalties. But the question here isn’t who foots the bill but who faces the executioner. And when society seeks to pass the ultimate moral judgment on an individual’s actions, the law doesn’t concern itself with comparatively trivial questions like who is the least-cost avoider but instead takes as its guide individual free will and choice. As Justice Jackson explained: “The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.” Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952); see also Staples v. United States, 511 U.S. 600, 616-17, 114 S.Ct. 1793,128 L.Ed.2d 608 (1994) (“In a system that generally requires a ‘vicious will’ to establish a crime, imposing severe punishments for offenses that require no mens rea would seem incongruous.” (quoting 4 William Blackstone, Commentaries *21)).
Indeed, even well outside the capital context the usual rule for accessory liability in American common law has, absent legislative innovation, required the government to prove that the defendant intended the object of his principal’s crimes — precisely to ensure liability extends only to those who freely choose wrong and the dragnet doesn’t reach individuals like the gun seller in the example above who perhaps could have (cheaply) avoided the crime but who are going about a lawful business. See, e.g., Rosemond v. United States, — U.S. -, 134 S.Ct. 1240, 1245, 1248-49, 188 L.Ed.2d 248 (2014); United States v. Manatau, 647 F.3d 1048, 1052 (10th Cir.2011); United States v. Falcone, 109 F.2d 579, 581 (2d Cir.1940) (Hand, J.) (defending the traditional view requiring intent for accessory liability in crime though of course Hand was himself a key innovator in tort (PL>B) when it came to low-cost avoidance); Model Penal Code § 2.02 cmt. 2 (1985); id. § 2.06 cmt. 6(c).
As the court today explains, we can avoid deciding whether the OCCA’s revamping of Oklahoma aiding and abetting law passes muster under the Supreme Court’s Eighth Amendment jurisprudence, though the answer seems both clear and clearly unfavorable. We can, however, only because the OCCA proceeded to acknowledge that its alterations to Oklahoma accessory liability law were essentially irrelevant to its resolution of this case. After overturning its accessory liability precedents, the OCCA noted that Mr. Williams could be found guilty even under its preexisting formulation of aiding and abetting doctrine because, in fact, he intended to kill or knew of his principal’s intent to kill and contributed substantially to the murder. Williams, 188 P.3d at 225-26 & n. 18. My colleagues explain that the OCCA’s determinations on these scores are both reasonable given the factual record in this case and sufficient to satisfy the Eighth Amendment rule announced in Tison. But without the fortuity of this alternative holding, it is altogether unclear that the OCCA’s decision in this case would warrant any deference in federal court under the directions Congress has given us in 28 U.S.C. § 2254(d)(1).