UNITED STATES of America, Plaintiff,

v.

Esteban PIZARRO, Jesús Vázquez, Defendants.

Crim. No. 86–316 (JP).

United States District Court,
D. Puerto Rico.

Dec. 7, 1987.

José A. Quiles, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

José C. Romo Matienzo, Río Grande, P.R., for defendant Esteban Pizarro.

Ramón García, Santurce, P.R., for defendant Jesús Vázquez.

## OPINION AND ORDER

PIERAS, District Judge.

On February 11, 1987, defendants Esteban Pizarro and Jesús Vázquez were convicted on all charges of a four-count indictment for cocaine importation, possession of cocaine with intent to distribute it, possession of undeclared cocaine aboard an aircraft, and conspiracy. On March 26, 1987, Vázquez was sentenced to ten years on each count and Pizarro to six years on each count. The defendants filed timely notices of appeal. On August 26 and 28, Vázquez and Pizarro respectively filed motions for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Those motions are based on the same "newly discovered evidence." The Court may and shall therefore examine them jointly.

### I. Jurisdiction To Entertain New Trial Motion During Appeal

In opposition to the motions for new trial, the government initially submitted "It is elementary that while a case is on appeal the District Court losses [sic] jurisdiction to entertain further proceeding in the case unless the Court of Appeals remands the case." This is not a correct statement of the law. In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court reviewed the mail fraud conviction of Cronic. In chronicling the procedural posture and history of the case, the High Court noted:

> The District Court denied that motion [for new trial under Rule 33, Fed.R. Crim.P.] for lack of jurisdiction because the case was pending on direct appeal at the time, but that ruling was erroneous. The District Court had jurisdiction to entertain the motion and either deny the motion on the merits, or certify its intention to grant the motion to the Court of Appeals, which would then entertain a motion to remand the case. (citations omitted).

466 U.S. at 667 n. 42.

Accordingly, this Court shall examine defendants' motions for new trial bearing in mind the two possible dispositions: (1) denial on the merits; or (2) a certification to the United States Court of Appeals for the First Circuit of our intention to grant a new trial if the case were remanded.

### II. Factual Background

On May 29, 1986, Viasa flight 962 from Caracas, Venezuela, arrived at Luis Muñoz Marín International Airport in Puerto Rico. Aboard the flight was Esteban Pizarro, a successful professional middleweight boxer. A figure among boxing fans in Puerto Rico, Pizarro was recognized by a U.S. Customs Inspector who examined his passport. Also aboard Viasa 962 was Jesús Vázquez, a Venezuelan national. The Customs Inspector who dealt with Vázquez testified at the trial that Vázquez told the Inspector he had come to this island to see Angel Santiago, a basketball player of some repute in Puerto Rico. The Customs

Inspector also testified that Vázquez claimed the bag in his possession belonged to Santiago, Santiago had left the bag in Venezuela, and Vázquez was going to return it. The Customs Inspector asked Vázquez to open the satchel, which Vázquez did. Visible were a pair of boxing gloves. The curious Customs Inspector asked why Santiago, a basketball player, had boxing gloves. Upon further inspection, the satchel also revealed the New York State Boxing Commission License of Esteban Pizarro. Vázquez denied knowing Pizarro.

Apparently based on these unusual goings-on, Pizarro was directed to a Secondary–Inspection area. When asked whether he was travelling with anyone, Pizarro stated that he came from Venezuela with Vázquez. Pizarro was directed to a search room. Before he could be frisked, however, Pizarro evidently concluded that the jig was up. He produced three packages that had been taped to his body. This was the cocaine that was the subject of the indictment. Pizarro and Vázquez were arrested.

Pizarro and Vázquez were let out of the Customs area to see if they would contact anyone at the airport who might be involved in the smuggling operation. Angel Santiago was present, may have had contact with Vázquez, and was detained.[1]

At trial, the government placed Maribel Centeno Ortíz on the stand. She testified that she had overheard a conversation between Vázquez and Santiago in Puerto Rico during May 1986. The nature of this conversation was that Santiago had attempted to recruit Pizarro for some task and that Vázquez was of the opinion that Pizarro would talk if caught. The conver-

sation has a nefarious context, to say the least.

The testimony of Centeno was intended to link defendants to a conspiracy to commit the substantive crimes charged in the indictment. The conversation that Centeno testified she overheard, however, was not one of the five overt acts detailed in the conspiracy count of the indictment.

### III. *Maribel Centeno Ortíz: Government Witness and Perjurer*

In September 1986, Centeno was indicted on charges of cocaine smuggling, much the same as Pizarro and Vázquez. She was arrested arriving on the same flight, Viasa 962 from Caracas on September 14, 1986. Centeno stood accused in Criminal Case No. 86–479(JP) along with one Alan Oscar Sánchez Ortíz. Both Centeno and Sánchez entered plea agreements with the government and changed their pleas to guilty on January 22, 1987. Sánchez was sentenced to two consecutive terms of six years imprisonment in March. Centeno, however, entered an amended plea agreement with the government while sentence was pending. That amended plea agreement was filed with the Court on February 25, 1987. On the government's motion, the indictment was dismissed as to Centeno on February 26.

Centeno was named but unindicted in another three-count indictment handed up concerning the September 14 flight of Viasa 962. Three other persons previously unindicted were charged by the Grand Jury in Criminal Case No. 87–022(PG).[2] At a pretrial conference in July, the government informed the Court that the indictment was based on perjured testimony and moved that the indictment be dismissed. The

---

1. Santiago was indicted with Pizarro and Vázquez on these charges. At the close of the government's case, the Court granted Santiago's motion for judgment of acquittal. Fed.R.Crim. P. 29(a). The government had not offered evidence sufficient to support the charges against Santiago.

2. Although the indictment apparently concerned the same cocaine as Criminal Case No. 86–479(JP), Alan Oscar Sánchez Ortíz was neither

indicted nor named. The second indictment concerning the September 14, 1986 flight of Viasa 962 was handed up January 28, six days after Sánchez and Centeno pled guilty to smuggling cocaine. The amount of cocaine mentioned in each indictment was the same, approximately 441 grams. Only the parties named in the two indictments, with the exception of the common smuggler Centeno, differed.

Court granted the motion and discharged the defendants.

On July 17, 1987, the Grand Jury returned a two-count indictment against Centeno. Count I charged violation of 18 U.S.C. section 1001, giving a false statement to a United States government agency. This count charged that on the day after her arrest upon arrival of the September 14 flight of Viasa 962, Centeno gave a statement to the Drug Enforcement Agency falsely implicating a woman who became one of the defendants in Criminal Case No. 87–022(PG). The second count of the indictment charged Centeno with perjury before the Grand Jury. Her allegedly perjured testimony concerned the same woman who was the subject of her September 15 statement. Centeno pled guilty on August 28, pursuant to yet another plea agreement, and was sentenced to four years imprisonment on October 30.

IV. *Motion for New Trial Based on Newly Discovered Evidence*

Pizarro and Vázquez have moved for a new trial based on newly discovered evidence. That newly discovered evidence is that Maribel Centeno Ortíz, a "key" witness in the government's case of conspiracy[3] committed perjury in an unrelated drug case. Pizarro and Vázquez argue that the testimony of Centeno at their trial was inherently unreliable. They do not, and cannot, bring themselves to any direct allegation of perjury in this case. We shall examine whether Centeno's subsequent perjury conviction in another case merits a new trial and the impact of Centeno's testimony on Pizarro and Vázquez' convictions.

*Standard for New Trial*

A motion for new trial should be granted on the basis of newly discovered evidence if (1) the evidence is, in fact, newly discovered; (2) the evidence is material; (3) the evidence would affect the outcome of the trial; and (4) the failure to obtain the evidence during trial is not due to lack of diligence. *United States v. Rodriguez,* 738 F.2d 13, 17 (1st Cir.1984); *Pelegrina v. United States,* 601 F.2d 18, 21 (1st Cir. 1979). The newly discovered evidence upon which defendants pin their hopes for a new trial is that one of the government's witnesses is a convicted perjurer. This is, in fact, newly discovered. Pizarro and Vázquez were convicted in February 1987 and sentenced the next month. Accusations of Centeno's perjury was first brought to the attention of this Court in July 1987. She was not sentenced until after Pizarro and Vázquez had filed their respective motions for new trial. Both defendants, then, have satisfied the first part of the test.

■ The newly discovered evidence, however, is not material. Evidence of Centeno's lack of veracity would be used to impeach her testimony. Impeachment evidence is presumptively immaterial. *Rodriguez,* 738 F.2d at 18, *citing* 3 C. Wright, *Federal Practice and Procedure* § 557 (1982). The presumption of immateriality in this case is buttressed by two additional factors. First, Centeno's testimony was already impeached at trial. During cross-examination, defense counsel questioned Centeno's reporting of the conversation between Vázquez and Santiago that occurred in Puerto Rico sometime in May 1986. This impeachment was based on Vázquez' Venezuelan passport, which revealed that the only time Vázquez had entered the United States was the date of his arrest, May 29, 1986. No other witness testified to any conversations between Vázquez and Santiago. The juxtaposition of Centeno's testimony as to a meeting between Vázquez and Santiago with Vázquez' passport indicating that he was not in Puerto Rico until his arrest certainly cast doubt on Centeno's testimony. We do not, however, explicitly decide whether Centeno's testimony was false for two rea-

---

**3.** The Court, even with a liberal reading of defendants' motions for new trial, can only see that defendants challenge their convictions on the conspiracy count of the indictment. Certainly Pizarro would have a tough row to hoe on the substantive counts of the indictment, when the cocaine was found taped to his body. In any case, as this Opinion and Order finds, there is no reason to disturb Vázquez' conviction on the substantive crimes charged in the indictment based upon the "newly discovered evidence."

sons. First, on cross-examination of a defense witness, the government elicited the response that dual passports are not uncommon in other countries, so that Vázquez' "first" entry into the United States on May 29, 1986, was not necessarily the only time he had been here. Second, and more important, Centeno's testimony was not relevant to the charges before the Court.

 This is the second factor buttressing our finding of immateriality. But the lack of relevancy of Centeno's testimony belies not only its materiality. Even if Centeno's testimony were perjury—and defendants have presented no recantation or evidence to show that it was—the elements of the offense to be proved against Pizarro and Vázquez were untouched by Centeno's testimony. Pizarro and Vázquez challenge their conspiracy convictions. To sustain a conviction for conspiracy, the government must prove beyond a reasonable doubt both the agreement to commit an offense and the commission of at least one overt act in furtherance of that agreement. *United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 206, 85 L.Ed. 128 (1940) (elements of conspiracy); *United States v. Notarantonio,* 758 F.2d 777, 788 (1st Cir. 1985). Because secrecy is the norm in conspiracies, that proof of conspiracy is largely circumstantial is immaterial. *United States v. Bithoney,* 631 F.2d 1, 5 (1st Cir. 1980). Circumstantial evidence can be sufficient to support a conspiracy conviction. *United States v. Delgado Figueroa,* 832 F.2d 691, 694–95 (1st Cir.1987); *Notarantonio,* 758 F.2d at 789; *United States v. Drougas,* 748 F.2d 8, 15 (1st Cir.1984). The agreement in this case was amply shown by the "development and a collocation of circumstances." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The development and collocation of circumstances are replete in the case against Pizarro and Vázquez. Government agents testified that Pizarro stated that he was travelling with Vázquez. Vázquez, on the other hand, told government agents that he did not know Pizarro. Despite this denial, Vázquez was carrying a bag laden with Pizarro's New York State Boxing Commission license and gloves, priceless possessions in Pizarro's profession and ones not lightly entrusted to others. The obvious inference is that at least Vázquez was trying to conceal his fellow traveller. Pizarro, who had cocaine taped to his body, would not be the sort of companion a foreign national would want upon entry to the United States. These obfuscations fully support the jury's finding of an agreement and plan to get Pizarro and his contraband past U.S. Customs. Vázquez, his statements concerning Santiago's absentmindedness about luggage notwithstanding, knew that he had to assist Pizarro off Viasa 962. Agreeing to help Pizarro off the plane and into the United States by carrying the boxing gloves and license was the essence of the agreement to smuggle cocaine.

An agreement to circumvent the drug laws of the United States having been shown beyond a reasonable doubt by strong albiet circumstantial evidence, the government need only prove one overt act in furtherance of the conspiracy to obtain conviction. The indictment listed five overt acts in furtherance of the conspiracy. Overt acts numbers one, two, and five detail meetings with Santiago. As previously noted, Santiago was acquitted at the close of the government's case. Overt acts numbers three and four of the indictment, however, deal exclusively with Pizarro and Vázquez.

3. On or about May 25 and 26, 1986, co-conspirators and codefendants ESTEBAN PIZARRO and JESUS VAZQUEZ held a meeting and stayed at Residencia Anauco Hilton in the Republic of Venezuela.

4. On or about May 29, 1986, co-conspirators and codefendants JESUS VAZQUEZ and ESTEBAN PIZARRO travelled from the Republic of Venezuela to Puerto Rico on Viasa flight 962 bringing with them 468.5 grams of cocaine.

The government introduced no testimony or documentary evidence, such as a hotel

receipt, concerning overt act number three.[4] On the other hand, the government produced unquestionable evidence concerning Pizarro and Vázquez' travels together on Viasa 962.

All this was shown without reference to Centeno's testimony. The indictment did not list as an overt act the conversation between Vázquez and Santiago about which Centeno testified. In hindsight, defendants may have done well to object to Centeno's testimony and move it stricken on the grounds of irrelevancy to the charges before the Court. Fed.R.Evid. 401. Defendants did not do so and in view of the overwhelming evidence against defendants, the Court cannot say that Centeno's testimony unfairly prejudiced Pizarro and Vázquez otherwise. In the same manner, a new trial without Centeno's testimony would achieve the same result: conviction on all counts. Pizarro and Vázquez therefore fail to make the requisite showing on the third facet of the test, probability of different outcome.

On the last facet of the test, that the failure to obtain the evidence was not because of lack of due diligence of counsel, Pizarro and Vázquez' attorneys cannot be faulted. They had the evidence of the apparent inconsistencies in Centeno's testimony before them at trial. Centeno was extensively cross-examined at trial on the fact that she overheard a conversation between Vázquez and Santiago at a time when Vázquez' passport had no record of entry into the United States. Centeno's subsequent indictment and conviction of perjury charges would definitely impeach Centeno. Because Centeno's testimony was already impeached, however, this additional impeachment would be merely cumulative.

Defendants having failed to carry their burden in their respective motions for new trial, these motions are DENIED in all respects. Counsel are reminded of their duty to inform the United States Court of

Appeals for the First Circuit of the disposition of these motions.

IT IS SO ORDERED.

---

**4.** This Court has routinely seen such evidence introduced in other cases. Hotel receipts are often found in the luggage of persons returning to this country and are seized as evidence when contraband is found.